LAURA I. PICKFORD *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   December 11, 1912. — January 29, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Street railway.

If the conductor of a crowded electric street car, after his car has stopped to take on passengers, gives the signal to start the car when he is inside the forward part of it, without making any effort to ascertain what or how many passengers are attempting to get upon the car and whether they actually have got upon it, thereby throwing to the ground a woman passenger who is in the act of boarding the car, in an action by such passenger for her injuries thus caused these facts are evidence of the conductor's negligence.

In an action by a woman against a corporation operating a street railway, for personal injuries sustained by reason of the starting of a car of the defendant when the plaintiff was in the act of boarding it, where it appears that the car was extremely crowded and had stopped to take on passengers at a place where many passengers ordinarily boarded the defendant's cars and that the conductor was inside the forward part of the car, evidence, that the conductor called out to the passengers on the rear platform, "Is it all right?" and received the reply, "All right, go ahead," and that relying on this assurance he gave the signal to start the car, does not, if believed, show as matter of law that the conductor was in the exercise of due care, it being a question for the jury whether under the circumstances shown the conductor was justified in relying on such assurance.

TORT, for personal injuries sustained at about 11.30 P. M. on March 12, 1910, from being thrown to the ground by the starting of an electric street car of the defendant when the plaintiff was in the act of boarding it as a passenger at the corner of Boylston Street and Dartmouth Street in Boston. Writ dated March 19, 1910.

In the Superior Court the case was tried before *Irwin*, J. The plaintiff testified that, while waiting for a car to take her to her home in Arlington, she had allowed two other Arlington cars to pass, as they were crowded; that when this car finally stopped there were two elderly ladies and a man named Yates in addition to herself who desired to take the car; that Yates helped the elderly ladies on to the car; that the plaintiff had a dress suit case in her right hand and that Yates had hold of her by the left arm and was

helping her on to the car when the car started; that Yates ran along with her for some little distance and finally, when he no longer could keep up with the car, she fell off, landing with her back against the dress suit case which had fallen to the street; that she heard no bells rung at any time and that she did not see the conductor of the car.

The conductor of the car at the time of the accident was called as a witness by the defendant, and testified that the car on that evening was extremely crowded and that he collected ninety-five fares during the trip; that the car was an ordinary box car with seats for thirty-eight passengers; that he remembered that he had stopped at the corner of Boylston Street and Dartmouth Street; that he also remembered that he was in the front end of his car collecting fares; that as the car came to a stop at Dartmouth Street he looked out of one of the front windows and saw three or four persons waiting to take the car; that after the car had come to a standstill and several persons had boarded it he thought that everybody had boarded it who desired to do so and called out from his position in the front of the car, "Is it all right?" and received a reply from the rear platform, "All right, go ahead;" that he gave the two bells and nothing was said to him by any one as to any person having fallen. On cross-examination he testified that the Dartmouth Street stop was one of the most important stops on the trip; that many passengers ordinarily boarded the cars there; that he did not know who it was that "hollered out," whether a man or a woman, though he did not remember or see any woman upon the rear platform.

At the close of the evidence the defendant asked the judge to give the following instructions:

"1. Upon all the evidence in the case the plaintiff is not entitled to recover.

"2. If at the time of the alleged accident the conductor of the car was inside his car near the front end for the purpose of collecting fares, and, if at that time the car was extremely crowded, making his passage up and down the car slow, tedious and a matter of great discomfort to the passengers in the car, and, if after the car had stopped a proper length of time for the purpose of allowing passengers either to board it or alight from it, the conductor called

out to some one or more passengers who were standing on the rear platform of the car to ask if it was 'all right' to start the car, and, if on receiving the reply from one or more passengers on the rear platform that it was 'all right' to start the car, and, if there was nothing in the appearance or deportment of the passengers who thus stated that it was 'all right' to start it to lead the conductor in the exercise of proper care to believe that they were not qualified to determine whether it was safe thus to give the signal to start the car, then, if the conductor acted upon their statement and gave the bells to start, he is not guilty of negligence and the defendant is entitled to a verdict in this case."

The judge refused to give these instructions, but gave an instruction, numbered three, which also was requested by the defendant, that, under the circumstances assumed in the second request, it was a question for the jury whether or not such conduct on the part of the conductor constituted negligence.

The jury returned a verdict for the plaintiff in the sum of $5,000, of which by requirement of the judge the plaintiff afterwards remitted all in excess of $3,500; and the defendant alleged exceptions to the refusal of his first two requests for instructions.

*E. P. Saltonstall,* for the defendant.

*R. H. Sherman,* for the plaintiff.

SHELDON, J. The case was for the jury. There was evidence both of due care of the plaintiff and of negligence on the part of the defendant's conductor. The conductor, although he was then at the front end of his car collecting fares, knew, or it could be found that he knew, that the car had stopped to take on passengers, and that the car was extremely crowded, so that probably there might be difficulty and delay in their getting on the car, especially if any of the new passengers were elderly women, as might be and was the case. But except for his own testimony, which of course was wholly for the jury, there was no evidence that he made any effort to ascertain what or how many passengers were attempting to get upon his car, or whether they actually had got upon it. The jury could have found that he caused his car to be started without concerning himself with these questions. Manifestly the case was for the jury.

The defendant's second request for instructions was rightly refused. It cannot be said upon the conductor's own testimony that he was justified in relying upon an assurance from one or more passengers upon the rear platform that it was "all right" and that he should "go ahead." The time of day, the crowded condition of the rear platform, any haste or impatience of belated passengers, and many other circumstances easy to conceive of might affect the degree of reliance that he would be justified in putting upon such an assurance. It was *prima facie* for him to determine whether new passengers had reached a position of safety upon his car; it cannot be said as matter of law that the circumstances justified him in delegating this duty to other passengers. The instructions given to the jury sufficiently guarded the defendant's rights.

*Exceptions overruled.*